**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      Plaintiff,      8:26-cr-00061 (AMN)

v.

FRANKLIN AMADEO TENECELA-
AGUAIZA,

      Defendant.

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **United States Attorney for the** | **DOUGLAS G.N. COLLYER, ESQ.** |
| **Northern District of New York** | Assistant United States Attorney |
| 14 Durkee Street – Room 340 | |
| Plattsburgh, New York 12901 | |
| *Attorneys for Plaintiff* | |
| **OFFICE OF THE FEDERAL** | **TIMOTHY E. AUSTIN, ESQ.** |
| **PUBLIC DEFENDER** | |
| 54 State Street – Suite 310 | |
| Albany, New York 12207 | |
| 4 Clinton Square – 3rd Floor | **JAMES P. EGAN, ESQ.** |
| Syracuse, New York 13202 | |
| *Attorneys for Defendant* | |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION & ORDER**

I.   **INTRODUCTION**

   Following a bench trial before the Honorable Gary L. Favro, Defendant Franklin Amadeo

Tenecela-Aguaiza was convicted of improper entry, in violation of 8 U.S.C. § 1325(a)(2).  Dkt.

No. 3-1 at 86.[1]  Magistrate Judge Favro sentenced Defendant to time served.  *See id.* at 87.

On appeal, Defendant argues that (i) venue is improper in the Northern District of New York and (ii) that the evidence was insufficient to establish Defendant's guilt under 8 U.S.C. § 1325(a)(2).  *See generally* Dkt. No. 3.

For the reasons set forth below, the Court vacates Defendant's conviction for lack of venue.

## II.     BACKGROUND

### A. Facts[2]

On November 1, 2025, a citizen reported a suspicious vehicle to the Ogdensburg Police Department.  Dkt. No. 3-1 at 58.  At approximately 10:00pm, after members of the Ogdensburg Police Department stopped the vehicle in St. Lawrence County, New York, a United States Border Patrol Agent responded to the traffic stop and encountered Defendant.  *Id.*  During a brief interview, Defendant admitted that he is a citizen of Ecuador and lacked authorization to be lawfully present in the United States.  *Id.*

Thereafter, Defendant was transported to the Ogdensburg Border Patrol Station.  *Id.* at 59. There, Defendant admitted that he unlawfully entered the United States at an unknown location near El Paso, Texas in or around August 2021 and was not inspected or admitted by an immigration officer.  *Id.*  A fingerprint check revealed no record of Defendant's legal admission into the United States, nor any record that Defendant had been previously inspected or examined by United States immigration authorities.  *Id.*  The Parties also stipulated that Defendant had no contact with federal officials for any immigration-related purpose prior to his encounter with United States Border

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[2] These facts are drawn from the Trial Stipulation, *see* Dkt. No. 3-1 at 58-63, which sets forth the facts the Court considered at trial.

Patrol Agents on November 1, 2025.  *Id.*

### B. Procedural History

On November 5, 2025, Defendant was charged in the Northern District of New York by complaint with violating 8 U.S.C. § 1325(a)(2).  *See id.* at 8-9.  On November 14, 2025, Defendant moved to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.  *Id.* at 12-19.  The Government opposed Defendant's motion on November 26, 2025, *see id.* at 20-33, and Defendant replied on December 2, 2025.  *Id.* at 34-43.  On December 10, 2025, after hearing oral argument, Magistrate Judge Favro denied Defendant's motion to dismiss.  *Id.* at 44-46.

On December 11, 2025, the Government filed an information charging Defendant with one count of improper entry by alien, in violation of 8 U.S.C. § 1325(a)(2).  *Id.* at 51.  On February 12, 2026, Magistrate Judge Favro held a one-day bench trial, which was conducted on stipulated facts, with no witnesses called by either Party.  *See id.* at 64-85.[3]  At the conclusion of the trial, Magistrate Judge Favro found Defendant guilty of violating 8 U.S.C. § 1325(a)(2).  *See id.* at 81:10-16.  That same day, Magistrate Judge Favro sentenced Defendant to time served.  *See id.* at 83:16-22, 87. Defendant preserved his appeal rights with respect to any arguments set forth in his prior motion to dismiss.  *See id.* at 81:17-23.  On February 20, 2026, Defendant timely filed a notice of appeal.  *Id.* at 90.

### III.    STANDARD OF REVIEW

This court has jurisdiction over Defendant's appeal pursuant to 18 U.S.C. § 3402 and Rule

---

[3] Defendant was tried jointly with defendant Carlos Javier Espinoza-Cabrera, who was also present during the traffic stop by the Ogdensburg Police Department on November 1, 2025, and subsequently charged with improper entry, in violation of 8 U.S.C. § 1325(a)(2).  *See* Dkt. No. 3 at 10, 12-13.

3

58 of the Federal Rules of Criminal Procedure. "In an appeal from a magistrate judge's judgment of conviction, 'the scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge.'" *United States v. Radin*, No. 16-cr-528, 2018 WL 1384514, at *3 (S.D.N.Y. Mar. 18, 2018) (quoting Fed. R. Crim. P. 58(g)(2)(D)), *aff'd*, 821 F. App'x 53 (2d Cir. 2020). "On appeal, this Court reviews questions of law *de novo* and accepts the Magistrate Judge's factual determinations, unless clearly erroneous." *United States v. Marquez*, 979 F. Supp. 2d 326, 331 (E.D.N.Y. 2013) (citing *United States v. Gandia*, 424 F.3d 255, 261 (2d Cir. 2005)); *see also United States v. Johnson*, No. 05-mc-94, 2006 WL 266557, at *1 (N.D.N.Y. Feb. 1, 2006).

IV.    **DISCUSSION**

"[Q]uestions of venue are more than matters of mere procedure." *Travis v. United States*, 364 U.S. 631, 634 (1961). "They raise deep issues of public policy in the light of which legislation must be construed." *Id.* (quoting *United States v. Johnson*, 323 U.S. 273, 276 (1944)). Because venue is not an element of a crime, the Government bears the burden of proving venue by a preponderance of the evidence. *United States v. Martinez*, No. 23-cr-7437, 2025 WL 1355432, at *2 (2d Cir. May 9, 2025). The Court's review of the Magistrate Judge's venue determination is *de novo*, but where, as here, "the Government has prevailed at trial, we review the sufficiency of the evidence as to venue in the light most favorable to the Government, crediting every inference that could have been drawn in its favor." *United States v. Hoskins*, 44 F.4th 140, 157 (2d Cir. 2022) (quoting *United States v. Lange*, 834 F.3d 58, 69 (2d Cir. 2016)).

Here, Defendant argues that venue in the Northern District of New York is improper because Defendant entered the United States in Texas, and therefore, no part of the crime was committed within the Northern District of New York. *See* Dkt. No. 3 at 14-26. The Government asserts that venue in this District is proper because eluding examination or inspection is a

4

continuing offense and, therefore, Defendant committed this crime in the Northern District of New York by continuing to remain in the United States without submitting to inspection or examination. *See* Dkt. No. 4 at 10-24.

The Court, when conducting statutory interpretation, "always . . . begin[s] with the text." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022). Accordingly, the Court begins with the text of Section 1325(a), which provides in relevant part:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact [is guilty of such offense].

8 U.S.C. § 1325(a).

The Government argues that the plain meaning of the word "elude" encompasses ongoing conduct. *See* Dkt. No. 4 at 11-12. Specifically, the Government contends that an individual continues to "elude" authorities until he or she is caught because at the time of the statute's enactment, the term "elude" meant "to avoid slyly or adroitly[,] . . . to evade[,] [or] to escape the notice or perception of." *Id.* at 11 (quoting Websters New English Dictionary 267 (6th ed. 1951)) (alterations omitted). Defendant agrees that the act of eluding "generally contemplates a risk of exposure to, and subsequent escape from, the object being eluded," but argues that once a noncitizen slyly avoids the examination or inspection process that takes place at a port of entry, the offense of improper entry is complete. Dkt. No. 3 at 16-17.

The Second Circuit has not addressed this question, but the Ninth Circuit's decision in *United States v. Corrales-Vazquez*, 931 F.3d 944 (9th Cir. 2019), is instructive here. As a preliminary matter, "because the relevant phrase—'eludes examination or inspection by immigration officers,' . . . 'has remained unchanged' since it was first used in 1929, it

'presumptively retains its original meaning.'" *Id*. at 948 (quoting 8 U.S.C. § 1325(a)(2), then *Whitfield v. United States*, 574 U.S. 265, 267 (2015)). Moreover, "[t]he processes referenced in [Section] 1325(a)(2)—examination or inspection by immigration officers—occur, as they always have, at designated points of entry that are staffed by immigration officials and open for inspection." *Id.* (quoting *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017)) (internal quotation marks and additional citations omitted). Specifically, the Ninth Circuit has indicated that the language "examination or inspection" specifically references immigration procedures conducted at the time of entry, which provide for a medical examination and physical inspection of each entering noncitizen at the time of entry. *See United States v. Rincon-Jimenez*, 595 F.2d 1192, 1193 (9th Cir. 1979); *see also Corrales-Vazquez*, 931 F.3d at 947 n.3 (noting that the term 'examination' refers to medical examinations, while the term 'inspection' refers to background screening, searches, and other prerequisites for admission (citing 8 U.S.C. §§ 1222(b), 1225(a)(3), 1225(d))). Therefore, a noncitizen "eludes examination or inspection," only where and when the noncitizen is at risk of undergoing examination or inspection, i.e., at open and operating ports of entry. *Corrales-Vazquez*, 931 F.3d at 949. As an example, a noncitizen eludes examination or inspection by "hid[ing] in the trunk of a vehicle passing through a port of entry," or by "cross[ing] through a port of entry on foot and then sneak[ing] by the officers conducting inspections or examinations," but not by "cross[ing] the border miles away from any place where those processes occur." *Id.*; *see also United States v. Oca*, No. 19-cr-1508, 2019 WL 3536823, at *4 (W.D. Tex. Aug. 2, 2019) (finding that defendant eluded inspection by immigration officers at the Bridge of the Americas Port of Entry where defendant "walked through vehicular traffic as opposed to using the pedestrian walkway [and] . . . maneuvered between semi-trucks under the cloak of darkness . . . to avoid or bypass the inspection point"), *aff'd sub nom. United States v. Montes-De Oca*, 820

6

F. App'x 247 (5th Cir. 2020).

Moreover, the obligation to submit to an examination and inspection does not temporally extend months or years after entering the United States because a noncitizen cannot avoid prosecution under Section 1325(a)(2) by submitting to examination and inspection months or years after failing to do so at the time of entry. *See United States v. Vega*, No. 25-mj-399, 2025 WL 3558747, at *3 (D. Me. Dec. 12, 2025). "[T]he Government has not cited any authority that would support an interpretation of [Section] 1325(a)(2) that would require a noncitizen to submit to an inspection or examination whenever the person encounters a border patrol agent." *Id.* (also noting that a noncitizen cannot avoid prosecution under Section 1325(a)(1) by presenting to a border patrol agent months after entering the United States at a location other than a designated port of entry); *see also United States v. Pereira*, No. 26-cr-112, 2026 WL 914935, at *1-2 (N.D.N.Y. Apr. 3, 2026) (finding that the Government failed to show a likelihood of success on the merits where defendant was charged in this District with violating Section 1325(a)(2) based upon defendant's entry in 2016 via the southern border without examination or inspection and "continued unlawful presence" in the United States).

In further support of its argument, the Government attempts to analogize the crime of eluding examination or inspection to the crime of escaping from federal custody, arguing that the act of eluding encompasses both the initial act of avoiding inspection when a noncitizen crosses the border and the act of continuing to avoid inspection. *See* Dkt. No. 4 at 11-13. The Court is not convinced that escape from federal prison is the proper analogy. First, the Supreme Court has held that escape from federal prison is a continuing offense for statute of limitations purposes, not for purposes of venue, *see United States v. Bailey*, 444 U.S. 394, 413 (1980) (citing *United States v. Toussie*, 397 U.S. 112, 115 (1970)), and the Government separately admits that the continuing

7

offense analysis is different for purposes of venue as compared to statute of limitations.  *See* Dkt.

No. 4 at 18 (citing *United States v. Reitmeyer*, 356 F.3d 1313, 1323 (10th Cir. 2004)); *see also*

*United States v. Guzman Tejeda*, No. 25-cr-10454, 2026 WL 1005634, at *8 n.8 (D. Mass. Apr. 6,

2026) (noting that the Government acknowledged that the test for continuing offenses for statute

of limitations purposes is different than for venue purposes).[4]  "Statutes of limitations limit

exposure to criminal prosecution to a certain fixed period of time[,] while the rules governing

venue limit prosecution to certain jurisdictions."  *United States v. Rutigliano*, 790 F.3d 389, 398

n.4 (2d Cir. 2015) (internal quotation marks and citation omitted).  Accordingly, the Court is

unpersuaded by this line of reasoning.

Furthermore, if subsection (a)(2) of Section 1325 is construed as broadly as the

Government posits, subsections (a)(1) and (a)(3) would be rendered superfluous.  Such an

interpretation would contravene "one of the most basic interpretative canons[:] that a statute should

be construed so that effect is given to all its provisions, so that no part will be inoperative or

superfluous, void or insignificant."  *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018)

---

[4] In *Toussie*, the Supreme Court cautioned that the continuing offense doctrine should be applied in "limited circumstances" for statute of limitations purposes when either "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States*, 397 U.S. 112, 115 (1970).  As the First Circuit has explained, "an overbroad application of the continuing-offense doctrine would undermine congressional policy to 'protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.'" *United States v. Pontz*, 132 F.4th 10, 25 (1st Cir. 2025) (quoting *id.* at 114-15).  But in the case of crimes of escape brought under 18 U.S.C. § 751(a), the Supreme Court has held that the tension between the purpose of a statute of limitations and the continuing offense doctrine is absent because the statute of limitations is tolled for the period that the escapee remains at large.  *Bailey*, 444 U.S. at 413-14.  Conversely, the statute of limitations is not tolled for the crime of eluding.  *See United States v. Cuadra Soto*, No. 25-mj-3267, 2026 WL 123220, at *6 (D. Neb. Jan. 16, 2026) (citing 18 U.S.C. § 3282); *see also Rincon-Jimenez*, 595 F.2d at 1194 (holding that the crime of eluding examination or inspection does not toll the five-year statute of limitations).

(quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).  In the instant case, the three provisions of Section 1325(a), each carrying identical criminal penalties, when considered together within the context of the statutory scheme, "are broad enough to cover entry in any manner":

> Section 1325(a)(1) covers aliens who enter or attempt to enter outside of an open port of entry.  Section 1325(a)(2) covers aliens who cross through an open port of entry, but elude examination or inspection in doing so. And [Section] 1325(a)(3) covers aliens who cross through an open port of entry and submit to examination and inspection, but obtain entry (or attempt to obtain entry) through willful misrepresentation or concealment. The statute works as a seamless whole.

*Corrales-Vazquez*, 931 F.3d at 950 (quoting H.R. Rep. No. 70-2418 at 4 and citing *Aldana*, 878 F.3d at 882); *see also Cuadra Soto*, 2026 WL 123220, at \*3 ("The more logical reading of the statutes suggest that Congress intended to criminalize the two ways a person can illegally enter the United States: by (1) avoiding the designated port of entry altogether or (2) deceiving immigration officials by eluding inspection or lying to officials during the inspection."). "By differentiating (a)(1)—which prohibits entry at any time or place other than as designated by immigration officials—as an improper time or place offense, it logically follows that (a)(2) and (a)(3) can only occur at a proper time or place, i.e.[,] at a designated port of entry." *Guzman Tejeda*, 2026 WL 1005634, at \*5 (internal quotation marks omitted).  If a noncitizen eludes examination or inspection by entering the United States outside a port of entry, he or she has violated Section 1325(a)(1).  But if, as the Government argues, merely crossing into the United States without examination or inspection violates subsection (a)(2), subsection (a)(1) becomes superfluous, and is subsumed entirely within subsection (a)(2) because "every violation of [Section] 1325(a)(1) for entering at a non-designated time or place would have also been a violation of [Section] 1325(a)(2) for eluding examination or inspection." *Corrales-Vasquez*, 931 F.3d at 950; *see also Vega*, 2025 WL 3558747, at \*2 (same).  Moreover, if Section 1325(a)(2) is a continuing offense, the violation of a separate statute, 8 U.S.C. § 1306, which criminalizes a noncitizen's willful failure to register

once he or she enters the United States, also becomes superfluous. "If living in the United States without reporting for inspection at the nearest port of entry or to the nearest immigration official is a crime, there is no need to separately penalize aliens who fail to register once they enter the country." *Cuadra Soto*, 2026 WL 123220, at *3 (citation omitted).

The Government also argues that, even without explicit language in Section 1325, the provisions of Title 8 that precede and follow Section 1325, such as 8 U.S.C. § 1326(a), suggest that Congress "believes that immigration crimes are generally of a continuing nature[.]" Dkt. No. 4 at 15. In contrast, Defendant argues that the absence of the phrase "found in" in Section 1325, which is included in Section 1326(a), a continuing offense, indicates that Section 1325 is concerned solely with entry, not presence. *See* Dkt. No. 3 at 18; *see also United States v. Constantine*, 417 F. Supp. 2d 337, 339 (S.D.N.Y. 2006) (noting that applicable caselaw in this Circuit holds that illegal reentry is a continuing offense), *aff'd*, 239 F. App'x 636 (2d Cir. 2007). The Court agrees with Defendant. If Congress intended to make Section 1325 a continuing offense, "it could have amended Section 1325 when it amended Section 1326 to add the 'found in' language[.]" *Cuadra Soto*, 2026 WL 123220, at *3, 3 n.2; *see also Rincon-Jimenez*, 595 F.2d at 1194 (declining to treat Section 1325 as a continuing offense in the absence of "language such as that found in [Section] 1326"); *Guzman Tejeda*, 2026 WL 1005634, at *11 (noting that in 1952, Congress explicitly added the words "is at any time found in" to Section 1326 "to facilitate prosecution in cases where it was not possible to establish the place of reentry, but did not add similar language to [Section] 1325" (internal quotation marks, citations, and alterations omitted)); *United States v. Garcia*, No. 08-cr-81, 2008 WL 2856753, at *16 n.26 (M.D. Fla. July 22, 2008) (noting that proposed legislation for Section 1325 sought to criminalize the unlawful presence of an alien "in order to bring [Section 1325] in line with the 'found in' offense in Section 1326" by

proposing to add "unlawful presence" to offense definition in Section 1325) (citing H.R. 4065, 110th Cong. § 203 (1st Sess. 2007); H.R.Rep. No. 109-345, Part I at 61 (2005)). Furthermore, offenses in other subsections of Section 1325 itself are not continuing. *See, e.g.*, *United States v. Ongaga*, 820 F.3d 152, 160 (5th Cir. 2016) (holding that marriage fraud under Section 1325(c) is not a continuing offense); *United States v. Rojas*, 718 F.3d 1317, 1320 (11th Cir. 2013) (same). Accordingly, there is no reason to infer that Congress intended for Section 1325(a)(2) to be a continuing offense.

Lastly, the Government argues that the canon of constitutional avoidance confirms that its reading of Section 1325(a)(2) is correct. Dkt. No. 4 at 19-22. The canon of constitutional avoidance applies when a statute is susceptible to more than one plausible construction. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). Specifically, "[w]hen a serious doubt is raised about the constitutionality of an Act of Congress, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Id.* (internal quotation marks and citation omitted). However, the canon of constitutional avoidance should not be invoked "to expand the reach of a criminal statute[.]" *United States v. Davis*, 588 U.S. 445, 463 (2019). Here, the Government argues that 8 U.S.C. § 1329 would be rendered unconstitutional if Section 1325(a)(2) was not a continuing offense because Section 1329 permits prosecutions "at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended." Dkt. No. 4 at 20 (quoting 8 U.S.C. § 1329).

However, as Defendant notes, a more persuasive interpretation of Section 1329 is that Congress was exercising its constitutional authority to permit the prosecution of Section 1325 crimes committed in United States territories, given that Article III of the U.S. Constitution grants

11

Congress the authority to establish venue in any place that it chooses "for crimes that are not committed in any State." Dkt. No. 3 at 26 (quoting U.S. Const., art. III, § 2); *see also Cuadra Soto*, 2026 WL 123220, at *4. "Under this interpretation, the district where the person is apprehended is the appropriate venue to prosecute someone who illegally entered a United States territory lacking a federal district court." *Cuadra Soto*, 2026 WL 123220, at *4; *see also* Eric S. Fish and Doug Keller, *Fabricating the Crime of Undocumented Presence*, at 20-21 (Nov. 14, 2025), https://ssrn.com/abstract=5750862 (positing that Section 1329 "was oriented, in part, toward noncitizens who originally entered through U.S. territories," given that Congress enacted Section 1329 during a time when the United States was acquiring numerous federal territories, many of which did not have U.S. federal courts, and thus federal crimes could not be prosecuted there). In other words, Congress enacted Section 1329 to ensure that individuals who committed federal immigration crimes in United States territories and later came to the continental United States could be prosecuted in the district in which they were apprehended, and all other prosecutions "may be instituted at any place in the United States at which the violation may occur[.]" 8 U.S.C. § 1329. Accordingly, under this interpretation, Section 1329 is not rendered unconstitutional.

* * *

For the reasons set forth above, Magistrate Judge Favro erred in determining that venue in the Northern District of New York is proper. Under Section 1325(a)(2), a defendant's conduct— "eluding examination or inspection by immigration officers"—must occur at a designated port of entry that is open for inspection and examination. *See United States v. Perez-Martinez*, 779 F. App'x 479, 480 (9th Cir. 2019); *Corrales-Vazquez*, 931 F.3d at 954 (same); *Guzman Tejeda*, 2026 WL 1005634, at *7 (same); *Vega*, 2025 WL 3558747, at *3 (noting that "[a] border patrol agent is

not the equivalent of and cannot substitute for a port of entry"). Section 1325(a)(2) does not subject a noncitizen to an ongoing, continuing obligation to report for immigration inspection after illegally entering the United States. *See Cuadra Soto*, 2026 WL 123220, at *7.

Here, Defendant entered the United States near El Paso, Texas without being inspected or examined by United States immigration authorities. *See* Dkt. No. 3-1 at 59. Because Defendant did not cross through a port of entry in the Northern District of New York, and does not have a continuing obligation to submit to examination or inspection under Section 1325(a)(2), venue is improper in the Northern District of New York.

In light of the Court's conclusion that venue is improper in this District, the Court does not reach the parties' remaining arguments. Accordingly, Defendant's conviction is vacated for lack of venue.

## V.      CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the judgment of the Magistrate Judge is **REVERSED** and Defendant's conviction for improper entry, in violation of 8 U.S.C. § 1325(a)(2), is **VACATED**; and the Court further

**ORDERS** that the case is **REMANDED** with instructions to dismiss the information without prejudice to refiling in a district in which venue is proper; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 27, 2026
       Albany, New York

Anne M. Nardacci
U.S. District Judge

13